Marina Lang, No. 251,087 mlang@socalip.com
Michael D. Harris, No. 59,470 mharris@socalip.com
SOCAL IP LAW GROUP LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

Attorneys for Plaintiff Marine and Bond Insurance
    Agency, Inc., dba American Marine Insurance

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Marine and Bond Insurance Agency, Inc., dba American Marine Insurance,<br><br>Plaintiff,<br><br>v.<br><br>Clayton Hubbell and Does 1 through 10,<br><br>Defendants. | No. 8:20-cv-00067<br><br>Complaint for Damages and Injunction:<br><br>(1) Misappropriation of Trade Secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836), (2) Misappropriation of Trade Secrets under Cal. Civ. Code §§ 3426 *et. seq.* and (3) Breach of Contract<br><br>Jury Trial Demand |

Plaintiff Marine and Bond Insurance Agency, Inc., dba American Marine Insurance ("AMI" or "Plaintiff") brings this Complaint against Clayton Hubbell ("Hubbell" or "Defendant") and Does 1 through 10 for Misappropriation of Trade Secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836), Misappropriation of Trade Secrets under Cal. Civ. Code §§ 3426 *et. seq.*, and Breach of Contract.

# First Claim for Relief

## (Misappropriation of Trade Secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836))

### Parties

1. Plaintiff AMI is a California corporation with its principal place of business at 2700 Newport Blvd., Ste. 190, Newport Beach (Orange County), California 92663.

2. Defendant Hubbell is an individual. On information and belief, he resides at 182 Valley Road, Oak View (Ventura County), California 93022.

3. AMI does not know the true names and capacities, whether individual, corporate, associate or otherwise, of defendant Does 1–10, inclusive. AMI, therefore, sues them by these fictitious names. AMI will amend this pleading when it ascertains their true names and capacities.

4. On information and belief, Does 1–10 do business in the United States and in this district.

5. Hubbell and Does 1–10 are called "Defendants" in this complaint.

### Jurisdiction and Venue

6. This is a claim for relief under the Defend Trade Secrets Act (18 U.S.C. § 1836(b)) because it involves misappropriation of a trade secret related to or service used in, or intended for, interstate or foreign commerce.

7. This Court has subject matter jurisdiction of this claim for relief under 18 U.S.C. § 1836(c).

8. The Court has personal jurisdiction over Hubbell because he resides in this district. Venue is proper in this district under 28 U.S.C. §§ 1391(a) because defendant Hubbell resides in this district.

### Background Information

9. Plaintiff AMI is a leading yacht insurance agency. It offers marine insurance for pleasure craft and commercial use throughout the United States, Canada,

Mexico and Costa Rica. It also specializes in insuring single- and multi-owner houseboats. It specializes only in marine insurance.

10. AMI has advantageous arrangement with the top Triple A-rated marine insurers in the United States. It offers marine insurance of all types, throughout the United States, and specializes in houseboat insurance, especially in Arizona, Utah, and Nevada.

11. On March 7, 2018, AMI and Hubbell signed an employment agreement ("Employment Agreement"). Exhibit 1 is a copy. In the agreement, Hubbell is defined as "Interested Party," and AMI is defined as "Company." Hubbell agreed to become an AMI employee subject to these and other obligations:

> 2. **Nonsolicitation of Customers**
>
> Interested Party acknowledges that the services to be performed under this Agreement are of a special, unique, unusual, extraordinary, and intellectual character, that the business of Company is national in scope, that its products are marketed throughout the United States, and that Company competes with other organizations that are or could be located in any part of the United States. Interested Party hereby covenants and agrees that Interested Party shall not, whether for Interested Party's own account or for the account of any other person, at any time during the provision of services to Company, and for a period of three years thereafter, solicit the business of any person known by Interested Party to be a customer or former customer of Company as of the termination of the provision of services, whether or not Interested Party had personal contact with such person during and by reason of their provision of services to Company.

4. **Notice to New Employers**

Interested Party further agrees that upon termination of services with Company, whether with or without cause, Interested Party will notify any new employer, partner, associate, or any other person, firm, or corporation with whom Interested Party becomes associated in any capacity whatever over a period of two years from termination, of the provisions of this article and that Company may give similar notice of it.

5. **Confidential Information**

For purposes of this Agreement, "Confidential Information" means all client-related information and data, and all secret or proprietary knowledge and information which is owned by and/or is proprietary to Company including without limitation:

>(a) all software and systems developed by Company (including such software and systems developed after the date hereof); (b) all website content, educational materials, sales presentations, sales illustration formats, employee enrollment and communication materials, employee benefit statements, financial reporting formats and master plan documents, agreements, and election forms materials (whether in writing, on video tape, audio tape, CD ROM, or DVD) related to (i) marketing (including training or education), (ii) management, and (iii) selling insurance; (c) client accounts, names, addresses, email, policies, boats, premium billings, letters, renewals and related information; and (d) any Confidential Information or materials from another party that Company obtains through a written or verbal confidentiality agreement. Notwithstanding the foregoing sentence, Confidential Information shall not include information that (a) other persons (including Interested Party's agents or repre-

sentatives) have previously submitted to Interested Party or prepared material for Interested Party prior to any access to Confidential Information Interested Party may receive from Company; (b) is independently developed by Interested Party without use of Confidential Information; or (c) is or becomes generally known or available to the public (except if the information becomes known or available to the public as a result of a breach of this Agreement).

**6. Covenant Against Disclosure of Confidential Information**

During the term of Interested Party's provision of services to Company, and thereafter in perpetuity, unless such time period is unreasonable and unenforceable for a specific piece of Confidential Information, in which case the time period for that piece of Confidential Information shall be ten years or a reasonable enforceable period as determined by the court, Interested Party shall treat Confidential Information as strictly confidential and shall not use for any purpose or disclose to any person or entity any Confidential Information acquired during the course of providing services to Company except as expressly provided for and permitted under this Agreement and except as required and authorized in the course of performing Interested Party's services to Company. Interested Party shall not, directly or indirectly, copy, take, or remove from Company's premises, any of Company's books, records, customer lists, or any other documents or materials. Upon termination of services or at the request of Company before termination, the Interested Party will deliver to Company all written and tangible material in Interested Party's possession incorporating Company's Confidential Information or otherwise relating to Company's business. These obligations with respect to Confidential Information extend to information belonging to customers

and suppliers of Company who may have been disclosed to the Interested Party in the course of business.

*6.1. Delivery of Documents and Data*

Interested Party agrees that, at the time that Interested Party's employment with or provision of services to Company terminates (voluntary or otherwise), or any prior time at the request of Company, Interested Party will promptly, and on termination without request, deliver to and inform Company of all documents and data pertaining to Interested Party's employment and the Confidential Information of Company or clients, whether prepared by Interested Party or otherwise coming into Interested Party's possession or control, including but not limited to any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, manuals, letters, notebooks, models, or other materials or property, or copies or reproductions of any aforementioned items belonging to Company, its successors, or assigns. Interested Party will not retain or deliver to anyone else any written or other tangible material containing any information concerning or disclosing any of the Confidential Information of Company or clients.

*6.2. Company's Ownership of Records*

Interested Party agrees that all records, reports, notes, compilations, or other recorded matter, and copies or reproductions thereof, relating to the Confidential Information or any other aspect of Company's operations, activities, or business, made or received by Interested Party during any period of employment with or provision of services to Company are and shall be Company's exclusive prop-

erty, and Interested Party will keep the same at all times in Company's custody and subject to its control, and will surrender the same at the termination of employment or provision of services or at any prior time upon request of Company.

**7. Nonsolicitation of Employees**

During the term of Interested Party's employment with or provision of services to Company and for a period of three years from the voluntary or involuntary termination of Interested Party's employment with or services to Company for any reason whatsoever, Interested Party shall not interfere with the business of Company, either on Interested Party's own account, or for any person, firm, partnership, corporation, or other entity, in any manner, including, without limitation, (a) soliciting, interfering with, or endeavoring to cause any employee of or party contracting with Company to leave his or her employment or terminate his or her contract, or (b) inducing or attempting to induce any such employee or contracting party to breach her or his employment agreement or contract with Company.

**8. Remedies**

In addition to all of the remedies otherwise available to Company, including, but not limited to, recovery from Interested Party of damages and reasonable attorney's fees incurred in the enforcement of this Agreement, Company shall have the right to injunctive relief to restrain and enjoin any actual or threatened breach of the provisions of Paragraphs, Covenant Against Disclosure of Confidential Information, Nonsolicitation of Employees, Nonsolicitation of Customers, and their subparagraphs herein. All of Company's remedies for breach of this Agreement shall be cumulative and the pursuit of one remedy shall not be deemed to exclude any other remedies.

*8.1. Interested Party's Liability for Consequential Damages*

The parties hereby agree that each of the foregoing matters is important, material, and confidential, and gravely affects the effective and successful conduct of the business of Company. Any breach of the terms of this Agreement is a material breach of this Agreement, from which Interested Party may be enjoined and for which the Interested Party shall also pay to Company all damages (including but not limited to compensatory, incidental, consequential, and lost profits damages), which arise from the breach, together with interest, costs, and Company's reasonable attorney's fees (through appeal) to enforce this Agreement.

**9. Extension of Restrictions upon Violation**

In the event of a violation by Interested Party of any covenant herein, the term of each such covenant so violated shall be automatically extended for another period equal to the original period from the date on which Interested Party permanently ceases such violation or from the date of the entry by a court of competent jurisdiction of a final order or judgment enforcing such covenant, whichever period termination date is later.

12. AMI's Employee Handbook also explained to Hubbell his duties to maintain AMI confidential information in confidence. Hubbell received and acknowledge receipt of the handbook on January 19, 2019.

13. Hubbell knew and understood his obligations under the Employment Agreement and the Employee Handbook and understood he was bound by them.

14. The confidential information referred to in the agreement and the Employee Handbook ("Confidential Information") are AMI trade secrets because they are memorialized physically, electronically, graphically, photographically, or in writing, and the information is actually secret, because it is neither known to, nor readily

ascertainable by, another person including Hubbell, AMI took reasonable measures to maintain the secrecy, and AMI derived independent economic value (actual or potential) from that secrecy.

15. AMI took reasonable measures including its Employment Agreement with Hubbell and the Employee Handbook to maintain the secrecy, and AMI derived independent economic value from that secrecy.

16. Hubbell voluntarily resigned as an AMI employee on March 29, 2019, and notified AMI's management of his resignation. When he left AMI's employment, he told AMI's management he would respect the terms of the employment and other agreements he had with AMI.

17. On information and belief, Hubbell made unauthorized copies of AMI's Confidential Information while he was an AMI employee bound by the Employment Agreement and the Employee Handbook. Since then, he used and continued using the Confidential Information to compete with AMI or to work for a company competing with AMI.

18. Hubbell's unauthorized use of AMI's trade secrets and Confidential Information damaged AMI because it allows Hubbell to compete with AMI much sooner than he could have if he tried to create the Confidential Information independently.

19. The amount of damages is unknown but is believed to exceed $200,000 and continues to increase.

20. Hubbell's misappropriation was willful and malicious.

21. Defendants were unjustly enriched through their misappropriation of AMI's trade secret, Confidential Information, but on information and belief, the unjust enrichment exceeds $200,000 and their unjust enrichment continues to increase.

22. Defendants use of AMI's Confidential Information irreparably harms AMI.

23. AMI has no adequate remedy at law because potential customers that became Hubbell or his employer's customers are unlikely to become AMI customers.

## SECOND CLAIM FOR RELIEF

## MISAPPROPRIATION OF TRADE SECRET UNDER CALIFORNIA LAW –

## CAL. CIV. CODE §§ 3426 ET. SEQ.

24. AMI incorporates by reference all allegations in all previous paragraphs.

25. This is a claim against Defendants for unfair competition under California laws. This court has subject matter jurisdiction over this claim for relief under 28 U.S.C. § 1338(b) because it is an unfair competition claim joined with a substantial and related claim under the Defend Trade Secrets Act.

26. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over this state law claim for relief because it is related to the claim for which original federal question jurisdiction attaches, and each forms part of the same claim or controversy under which the Court has subject matter jurisdiction under Article III of the United States Constitution.

27. California Civil Code § 3425.1(b) defines trade secret misappropriation as:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent by a person who: (A) Used improper means to acquire knowledge of the trade secret; or (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: (i) Derived from or through a person who had utilized improper means to acquire it; (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limits its use; or (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limits its use; or (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

28. Defendants' unauthorized use and infringement of AMI's trade secret, Confidential Information damaged AMI because it allowed them to compete with AMI much sooner than they would have had they created the information themselves. The amount of damages is unknown but is believed to exceed $200,000 and continues to increase.

29. Defendants' were unjustly enriched through their misappropriation of AMI's Confidential Information, trade secrets, but on information and belief, the unjust enrichment exceeds $200,000 and continues to increase.

30. Defendants irreparably harmed AMI.

31. AMI has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT (CALIFORNIA LAW)

32. AMI incorporates by reference all previous paragraphs.

33. This Court has supplemental jurisdiction over this state law claim for relief under 28 U.S.C. § 1367 as it is related to the claim for which original federal question jurisdiction attaches, and it forms part of the same claim or controversy under which the Court has subject matter jurisdiction under Article III of the United States Constitution.

34. Defendant Hubbell breached his Employment Agreement with AMI by using the Confidential Information for Hubbell's benefit.

35. Because of Hubbell's use of the Confidential Information, AMI has been damaged in an unknown amount but believed to exceed $200,000.

### REQUEST FOR RELIEF

36. AMI requests the Court grant judgment:

37. Ordering Hubbell and the other defendants to pay AMI its damages, in an undetermined amount but believed to exceed $200,000 from Hubbell's breach of contract, and Hubbell's federal and state misappropriation of trade secrets.

38. Ordering Hubbell and the other defendants to pay AMI its damages under the Employment Contract.

39. Ordering an accounting to determine the profits Hubbell and the other defendants earned from their federal and state misappropriation of trade secrets and to pay those profits to AMI.

40. Ordering the profits be increased under Cal. Civ. Code § 3426.3.

41. Enjoining Defendants, their officers, agents, servants, employees and attorneys, and other persons in active concert or participation with them, and their parents, subsidiaries, divisions, successors and assigns, from further use and infringement of AMI's trade secrets.

42. Ordering AMI to recover its costs.

43. Ordering an award reasonable attorney fees to AMI under claims for relief that allow recovery of attorney fees.

44. Ordering AMI be awarded exemplary damages under claims for relief that allow recovery of exemplary damages.

45. Ordering any appropriate, further relief.

January 13, 2020        /s/ Marina Lang
                        Marina Lang
                        SoCal IP Law Group LLP

                        Attorneys for Plaintiff Marine and Bond Insurance Agency, Inc., dba American Marine Insurance

## JURY TRIAL DEMAND

Plaintiff AMI demands a jury trial on all claims for relief for which jury trials are authorized.

January 13, 2020        /s/ Marina Lang
                        Marina Lang
                        SoCal IP Law Group LLP

                        Attorneys for Plaintiff Marine and Bond Insurance Agency, Inc., dba American Marine Insurance